**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

MAR 14 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-50217 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-02447-WQH-3 |
| v. | |
| LUIS CIBRIAN-QUINTERO, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted October 12, 2012
Pasadena, California

Before: WARDLAW and NGUYEN, Circuit Judges, and SIMON, District Judge.**

Luis Cibrian-Quintero ("Cibrian"), a citizen of Mexico, appeals from the 84-

month sentence imposed by the United States District Court for the Southern

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\*      The Honorable Michael H. Simon, District Judge for the U.S. District
Court for the District of Oregon, sitting by designation.

District of California for importing marijuana into the United States in violation of 21 U.S.C. §§ 952 and 960. Cibrian contends that the district court erred in attributing to him the total amount of marijuana that he and his companions carried rather than only the amount that he personally carried, improperly increasing his base offense level under the United States Sentencing Guidelines ("U.S.S.G."). We affirm the district court.[1]

We review the district court's interpretation of the Guidelines *de novo* and its application of the Guidelines to the facts of the case for abuse of discretion. United States v. Dallman, 533 F.3d 755, 760 (9th Cir. 2008) (citing United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006)). A district court's determination as to whether a defendant is responsible for the drugs imported by his codefendants is a factual finding, which we review for clear error. See United States v. Palafox-Mazon, 198 F.3d 1182, 1186 (9th Cir. 2000) (citing United States v. Asagba, 77 F.3d 324, 325 (9th Cir. 1996)).

Under U.S.S.G. § 1B1.3(a)(1), the offense level for a convicted defendant is based on all conduct for which the defendant is directly responsible as well as, "in

---

[1]The Government argues that Cibrian's appeal is "moot" because the charge to which he pleaded specifies the quantity of marijuana that he and his codefendants imported. We do not reach this argument because we affirm the district court on other grounds.

the case of a jointly undertaken criminal activity . . . , all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." If defendants traffic drugs as a joint criminal activity, each defendant is responsible for the entire quantity of drugs transported. Palafox-Mazon, 198 F.3d at 1186. "In cases involving a group of marijuana backpackers where the facts escape easy categorization, a sentencing judge may determine whether the offense is more appropriately viewed as one jointly undertaken or not." Id. at 1188 (internal quotation marks omitted).

The district court did not clearly err in finding that Cibrian and his companions participated in a joint undertaking and consequently calculating Cibrian's Guidelines range based on the aggregate amount of marijuana. The facts of this case are largely analogous to those in Dallman. There, each of the three defendants carried two backpacks tied together in a similar manner and "likely aided each other" in climbing over a barbed wire fence into the United States from Canada. 533 F.3d at 759, 760. That degree of cooperation was sufficient for the district court to attribute the whole quantity of marijuana to each defendant. Id. at 760.

Here, Cibrian and his codefendants wore matching uniforms and cloth booties over their shoes, much like the defendants who wore similarly tied-together

backpacks in <u>Dallman</u>. Further, although one smuggler took a separate path to reach the staging area, Cibrian, who carried a cell phone, stayed with the other defendant, who did not. Because the defendants were told to wait at the staging area for a phone call, this was "cooperative and coordinated conduct," <u>Dallman</u>, 533 F.3d at 760, much like the assistance the defendants in <u>Dallman</u> provided each other in climbing over the barbed wire fence.

Unlike in <u>Palafox-Mazon</u>, nothing in the record here undermines the inference that defendants cooperated in transporting the marijuana.[2] There is no evidence that they were "independently and individually recruited . . . on different days," were guided by some party unfamiliar to them, or did not know their route or destination. <u>Palafox-Mazon</u>, 198 F.3d at 1184. Although Cibrian argues that they were "separated," "arrived at the [staging area] at different times," and were "arrested separately," the Pre-Sentence Report clarifies that of the three defendants, only one left the group; Cibrian and another defendant stayed together, arrived together, and were arrested together "shortly" after the third defendant.

---

[2]Cibrian argues that, unlike Dallman, he did not plead guilty to a conspiracy charge. As the court noted in <u>Palafox-Mazon</u>, however, while conviction of a conspiracy charge can bolster a finding of jointly undertaken criminal activity, dismissal of conspiracy charges have "no direct bearing on the correctness of the district court's decision." 198 F.3d at 1189 n.3. In addition, Cibrian's codefendants both pleaded guilty to conspiracy charges.

Cibrian and his companions thus demonstrated a sufficient degree of cooperation in importing marijuana into the United States to support the district court's finding that they participated in a "jointly undertaken criminal activity" under U.S.S.G. § 1B1.3(a)(1). The district court's judgment is therefore **AFFIRMED**.